EXHIBIT A

South Dakota Codified Laws
Title 36. Professions and Occupations (Refs & Annos)
Chapter 36-4. Physicians and Surgeons (Refs & Annos)

SDCL § 36-4-44

36-4-44. **Interstate Medical** Licensure **Compact** adopted

Currentness

The **Interstate Medical** Licensure **Compact** is enacted into law and entered into with all other jurisdictions that legally join the **compact**, which is substantially as follows:

## INTERSTATE MEDICAL LICENSURE COMPACT

### SECTION 1: PURPOSE

In order to strengthen access to health care, and in recognition of the advances in the delivery of health care, the member states of the **Interstate Medical** Licensure **Compact** have allied in common purpose to develop a comprehensive process that complements the existing **licensing** and regulatory authority of state **medical** boards, provides a streamlined process that allows physicians to become **licensed** in multiple states, thereby enhancing the portability of a **medical license** and ensuring the safety of patients. The **compact** creates another pathway for licensure and does not otherwise change a state's existing **Medical** Practice Act. The **compact** also adopts the prevailing standard for licensure and affirms that the practice of medicine occurs where the patient is located at the time of the physician-patient encounter, and therefore, requires the physician to be under the jurisdiction of the state **medical** board where the patient is located. State **medical** boards that participate in the **compact** retain the jurisdiction to impose an adverse action against a **license** to practice medicine in that state issued to a physician through the procedures in the **compact**.

### SECTION 2: DEFINITIONS

In this **compact**:

(a) "Bylaws" means those bylaws established by the **Interstate** Commission pursuant to section 11 for its governance, or for directing and controlling its actions and conduct.

(b) "Commissioner" means the voting representative appointed by each member board pursuant to section 11.

(c) "Conviction" means a finding by a court that an individual is guilty of a criminal offense through adjudication, or entry of a plea of guilt or no contest to the charge by the offender. Evidence of an entry of a conviction of a criminal offense by the court shall be considered final for purposes of disciplinary action by a member board.

(d) "Expedited **License**" means a full and unrestricted **medical license** granted by a member state to an eligible physician through the process set forth in the **compact**.

 © 2019 Thomson Reuters. No claim to original U.S. Government Works. 

(e) "Interstate Commission" means the interstate commission created pursuant to section 11.

(f) "License" means authorization by a state for a physician to engage in the practice of medicine, which would be unlawful without the authorization.

(g) "Medical Practice Act" means laws and regulations governing the practice of allopathic and osteopathic medicine within a member state.

(h) "Member Board" means a state agency in a member state that acts in the sovereign interests of the state by protecting the public through licensure, regulation, and education of physicians as directed by the state government.

(i) "Member State" means a state that has enacted the compact.

(j) "Practice of Medicine" means the clinical prevention, diagnosis, or treatment of human disease, injury, or condition requiring a physician to obtain and maintain a license in compliance with the Medical Practice Act of a member state.

(k) "Physician" means any person who:

(1) Is a graduate of a medical school accredited by the Liaison Committee on Medical Education, the Commission on Osteopathic College Accreditation, or a medical school listed in the International Medical Education Directory or its equivalent;

(2) Passed each component of the United States Medical Licensing Examination (USMLE) or the Comprehensive Osteopathic Medical Licensing Examination (COMLEX-USA) within three attempts, or any of its predecessor examinations accepted by a state medical board as an equivalent examination for licensure purposes;

(3) Successfully completed graduate medical education approved by the Accreditation Council for Graduate Medical Education or the American Osteopathic Association;

(4) Holds specialty certification or a time-unlimited specialty certificate recognized by the American Board of Medical Specialties or the American Osteopathic Association's Bureau of Osteopathic Specialists;

(5) Possesses a full and unrestricted license to engage in the practice of medicine issued by a member board;

(6) Has never been convicted, received adjudication, deferred adjudication, community supervision, or deferred disposition for any offense by a court of appropriate jurisdiction;

 © 2019 Thomson Reuters. No claim to original U.S. Government Works. 

(7) Has never held a **license** authorizing the practice of medicine subjected to discipline by a **licensing** agency in any state, federal, or foreign jurisdiction, excluding any action related to nonpayment of fees related to a **license**;

(8) Has never had a controlled substance **license** or permit suspended or revoked by a state or the United States Drug Enforcement Administration; and

(9) Is not under active investigation by a **licensing** agency or law enforcement authority in any state, federal, or foreign jurisdiction.

(l) "Offense" means a felony, gross misdemeanor, or crime of moral turpitude.

(m) "Rule" means a written statement by the **Interstate** Commission promulgated pursuant to section 12 of the **compact** that is of general applicability, implements, interprets, or prescribes a policy or provision of the **Compact**, or an organizational, procedural, or practice requirement of the **Interstate** Commission, and has the force and effect of statutory law in a member state, and includes the amendment, repeal, or suspension of an existing rule.

(n) "State" means any state, commonwealth, district, or territory of the United States.

(o) "State of Principal **License**" means a member state where a physician holds a **license** to practice medicine and which has been designated as such by the physician for purposes of registration and participation in the **compact**.

SECTION 3: ELIGIBILITY

(a) A physician must meet the eligibility requirements as defined in section 2(k) to receive an expedited **license** under the terms and provisions of the **compact**.

(b) A physician who does not meet the requirements of section 2(k) may obtain a **license** to practice medicine in a member state if the individual complies with all laws and requirements, other than the **compact**, relating to the issuance of a **license** to practice medicine in that state.

SECTION 4: DESIGNATION OF STATE OF PRINCIPAL **LICENSE**

(a) A physician shall designate a member state as the state of principal **license** for purposes of registration for expedited licensure through the **compact** if the physician possesses a full and unrestricted **license** to practice medicine in that state, and the state is:

(1) The state of primary residence for the physician; or

(2) The state where at least twenty-five percent of the practice of medicine occurs; or

(3) The location of the physician's employer; or

(4) If no state qualifies under subsection (1), subsection (2), or subsection (3), the state designated as state of residence for purpose of federal income tax.

(b) A physician may redesignate a member state as state of principal **license** at any time, as long as the state meets the requirements in subsection (a).

(c) The **Interstate** Commission is authorized to develop rules to facilitate redesignation of another member state as the state of principal **license**.

SECTION 5: APPLICATION AND ISSUANCE OF EXPEDITED LICENSURE

(a) A physician seeking licensure through the **compact** shall file an application for an expedited **license** with the member board of the state selected by the physician as the state of principal **license**.

(b) Upon receipt of an application for an expedited **license**, the member board within the state selected as the state of principal **license** shall evaluate whether the physician is eligible for expedited licensure and issue a letter of qualification, verifying or denying the physician's eligibility, to the **Interstate** Commission.

(i) Static qualifications, which include verification of **medical** education, graduate **medical** education, results of any **medical** or **licensing** examination, and other qualifications as determined by the **Interstate** Commission through rule, shall not be subject to additional primary source verification where already primary source verified by the state of principal **license**.

(ii) The member board within the state selected as the state of principal **license** shall, in the course of verifying eligibility, perform a criminal background check of an applicant, including the use of the results of fingerprint or other biometric data checks compliant with the requirements of the Federal Bureau of Investigation, with the exception of federal employees who have suitability determination in accordance with U.S. C.F.R. § 731.202.

(iii) Appeal on the determination of eligibility shall be made to the member state where the application was filed and shall be subject to the law of that state.

(c) Upon verification in subsection (b), physicians eligible for an expedited **license** shall complete the registration process established by the **Interstate** Commission to receive a **license** in a member state selected pursuant to subsection (a), including the payment of any applicable fees.

(d) After receiving verification of eligibility under subsection (b) and any fees under subsection (c), a member board shall issue an expedited **license** to the physician. This **license** shall authorize the physician to practice medicine in the issuing state consistent with the **Medical** Practice Act and all applicable laws and regulations of the issuing member board and member state.

 © 2019 Thomson Reuters. No claim to original U.S. Government Works. 

(e) An expedited license shall be valid for a period consistent with the licensure period in the member state and in the same manner as required for other physicians holding a full and unrestricted license within the member state.

(f) An expedited license obtained though the compact shall be terminated if a physician fails to maintain a license in the state of principal licensure for a nondisciplinary reason, without redesignation of a new state of principal licensure.

(g) The Interstate Commission is authorized to develop rules regarding the application process, including payment of any applicable fees, and the issuance of an expedited license.

SECTION 6: FEES FOR EXPEDITED LICENSURE

(a) A member state issuing an expedited license authorizing the practice of medicine in that state may impose a fee for a license issued or renewed through the compact.

(b) The Interstate Commission is authorized to develop rules regarding fees for expedited licenses.

SECTION 7: RENEWAL AND CONTINUED PARTICIPATION

(a) A physician seeking to renew an expedited license granted in a member state shall complete a renewal process with the Interstate Commission if the physician:

(1) Maintains a full and unrestricted license in a state of principal license;

(2) Has not been convicted, received adjudication, deferred adjudication, community supervision, or deferred disposition for any offense by a court of appropriate jurisdiction;

(3) Has not had a license authorizing the practice of medicine subject to discipline by a licensing agency in any state, federal, or foreign jurisdiction, excluding any action related to nonpayment of fees related to a license; and

(4) Has not had a controlled substance license or permit suspended or revoked by a state or the United States Drug Enforcement Administration.

(b) Physicians shall comply with all continuing professional development or continuing medical education requirements for renewal of a license issued by a member state.

(c) The Interstate Commission shall collect any renewal fees charged for the renewal of a license and distribute the fees to the applicable member board.

(d) Upon receipt of any renewal fees collected in subsection (c), a member board shall renew the physician's license.

(e) Physician information collected by the **Interstate** Commission during the renewal process will be distributed to all member boards.

(f) The **Interstate** Commission is authorized to develop rules to address renewal of **licenses** obtained through the **compact**.

SECTION 8: COORDINATED INFORMATION SYSTEM

(a) The **Interstate** Commission shall establish a database of all physicians **licensed**, or who have applied for licensure, under section 5.

(b) Notwithstanding any other provision of law, member boards shall report to the **Interstate** Commission any public action or complaints against a **licensed** physician who has applied or received an expedited **license** through the **compact**.

(c) Member boards shall report disciplinary or investigatory information determined as necessary and proper by rule of the **Interstate** Commission.

(d) Member boards may report any nonpublic complaint, disciplinary, or investigatory information not required by subsection (c) to the **Interstate** Commission.

(e) Member boards shall share complaint or disciplinary information about a physician upon request of another member board.

(f) All information provided to the **Interstate** Commission or distributed by member boards shall be confidential, filed under seal, and used only for investigatory or disciplinary matters.

(g) The **Interstate** Commission is authorized to develop rules for mandated or discretionary sharing of information by member boards.

SECTION 9: JOINT INVESTIGATIONS

(a) Licensure and disciplinary records of physicians are deemed investigative.

(b) In addition to the authority granted to a member board by its respective **Medical** Practice Act or other applicable state law, a member board may participate with other member boards in joint investigations of physicians **licensed** by the member boards.

(c) A subpoena issued by a member state shall be enforceable in other member states.

(d) Member boards may share any investigative, litigation, or compliance materials in furtherance of any joint or individual investigation initiated under the **compact**.

(e) Any member state may investigate actual or alleged violations of the statutes authorizing the practice of medicine in any other member state in which a physician holds a **license** to practice medicine.

SECTION 10: DISCIPLINARY ACTIONS

(a) Any disciplinary action taken by any member board against a physician **licensed** through the **compact** shall be deemed unprofessional conduct which may be subject to discipline by other member boards, in addition to any violation of the **Medical** Practice Act or regulations in that state.

(b) If a **license** granted to a physician by the member board in the state of principal **license** is revoked, surrendered or relinquished in lieu of discipline, or suspended, then all **licenses** issued to the physician by member boards shall automatically be placed, without further action necessary by any member board, on the same status. If the member board in the state of principal **license** subsequently reinstates the physician's **license**, a **license** issued to the physician by any other member board shall remain encumbered until that respective member board takes action to reinstate the **license** in a manner consistent with the **Medical** Practice Act of that state.

(c) If disciplinary action is taken against a physician by a member board not in the state of principal **license**, any other member board may deem the action conclusive as to matter of law and fact decided, and:

(i) Impose the same or lesser sanction(s) against the physician so long as such sanctions are consistent with the **Medical** Practice Act of that state; or

(ii) Pursue separate disciplinary action against the physician under its respective **Medical** Practice Act, regardless of the action taken in other member states.

(d) If a **license** granted to a physician by a member board is revoked, surrendered or relinquished in lieu of discipline, or suspended, then any **license**(s) issued to the physician by any other member board(s) shall be suspended, automatically and immediately without further action necessary by the other member board(s), for ninety days upon entry of the order by the disciplining board, to permit the member board(s) to investigate the basis for the action under the **Medical** Practice Act of that state. A member board may terminate the automatic suspension of the **license** it issued prior to the completion of the ninety day suspension period in a manner consistent with the **Medical** Practice Act of that state.

SECTION 11: **INTERSTATE MEDICAL** LICENSURE **COMPACT** COMMISSION

(a) The member states hereby create the **Interstate Medical** Licensure **Compact** Commission.

(b) The purpose of the **Interstate** Commission is the administration of the **Interstate Medical** Licensure **Compact**, which is a discretionary state function.

(c) The **Interstate** Commission shall be a body corporate and joint agency of the member states and shall have all the responsibilities, powers, and duties set forth in the **compact**, and such additional powers as may be conferred upon it by a subsequent concurrent action of the respective legislatures of the member states in accordance with the terms of the **compact**.

(d) The **Interstate** Commission shall consist of two voting representatives appointed by each member state who shall serve as commissioners. In states where allopathic and osteopathic physicians are regulated by separate member boards, or if the **licensing** and disciplinary authority is split between multiple member boards within a member state, the member state shall appoint one representative from each member board. A commissioner shall be a(n):

(1) Allopathic or osteopathic physician appointed to a member board;

(2) Executive director, executive secretary, or similar executive of a member board; or

(3) Member of the public appointed to a member board.

(e) The **Interstate** Commission shall meet at least once each calendar year. A portion of this meeting shall be a business meeting to address such matters as may properly come before the commission, including the election of officers. The chairperson may call additional meetings and shall call for a meeting upon the request of a majority of the member states.

(f) The bylaws may provide for meetings of the **Interstate** Commission to be conducted by telecommunication or electronic communication.

(g) Each commissioner participating at a meeting of the **Interstate** Commission is entitled to one vote. A majority of commissioners shall constitute a quorum for the transaction of business, unless a larger quorum is required by the bylaws of the **Interstate** Commission. A commissioner shall not delegate a vote to another commissioner. In the absence of its commissioner, a member state may delegate voting authority for a specified meeting to another person from that state who shall meet the requirements of subsection (d).

(h) The **Interstate** Commission shall provide public notice of all meetings and all meetings shall be open to the public. The **Interstate** Commission may close a meeting, in full or in portion, where it determines by a two-thirds vote of the commissioners present that an open meeting would be likely to:

(1) Relate solely to the internal personnel practices and procedures of the **Interstate** Commission;

(2) Discuss matters specifically exempted from disclosure by federal statute;

(3) Discuss trade secrets, commercial, or financial information that is privileged or confidential;

(4) Involve accusing a person of a crime, or formally censuring a person;

(5) Discuss information of a personal nature where disclosure would constitute a clearly unwarranted invasion of personal privacy;

(6) Discuss investigative records compiled for law enforcement purposes; or

(7) Specifically relate to the participation in a civil action or other legal proceeding.

(i) The **Interstate** Commission shall keep minutes which shall fully describe all matters discussed in a meeting and shall provide a full and accurate summary of actions taken, including record of any roll call votes.

(j) The **Interstate** Commission shall make its information and official records, to the extent not otherwise designated in the **compact** or by its rules, available to the public for inspection.

(k) The **Interstate** Commission shall establish an executive committee, which shall include officers, members, and others as determined by the bylaws. The executive committee shall have the power to act on behalf of the **Interstate** Commission, with the exception of rulemaking, during periods when the **Interstate** Commission is not in session. When acting on behalf of the **Interstate** Commission, the executive committee shall oversee the administration of the **compact** including enforcement and compliance with the provisions of the **compact**, its bylaws and rules, and other such duties as necessary.

(l) The **Interstate** Commission may establish other committees for governance and administration of the **compact**.

SECTION 12: POWERS AND DUTIES OF THE **INTERSTATE** COMMISSION

The **Interstate** Commission shall have the duty and power to:

(a) Oversee and maintain the administration of the **compact**;

(b) Promulgate rules which shall be binding to the extent and in the manner provided for in the **compact**;

(c) Issue, upon the request of a member state or member board, advisory opinions concerning the meaning or interpretation of the **compact**, its bylaws, rules, and actions;

(d) Enforce compliance with **compact** provisions, the rules promulgated by the **Interstate** Commission, and the bylaws, using all necessary and proper means, including but not limited to the use of judicial process;

(e) Establish and appoint committees including, but not limited to, an executive committee as required by section 11, which shall have the power to act on behalf of the **Interstate** Commission in carrying out its powers and duties;

 © 2019 Thomson Reuters. No claim to original U.S. Government Works. 

(f) Pay, or provide for the payment of the expenses related to the establishment, organization, and ongoing activities of the **Interstate** Commission;

(g) Establish and maintain one or more offices;

(h) Borrow, accept, hire, or contract for services of personnel;

(i) Purchase and maintain insurance and bonds;

(j) Employ an executive director who shall have such powers to employ, select or appoint employees, agents, or consultants, and to determine their qualifications, define their duties, and fix their compensation;

(k) Establish personnel policies and programs relating to conflicts of interest, rates of compensation, and qualifications of personnel;

(l) Accept donations and grants of money, equipment, supplies, materials and services, and to receive, utilize, and dispose of it in a manner consistent with the conflict of interest policies established by the **Interstate** Commission;

(m) Lease, purchase, accept contributions or donations of, or otherwise to own, hold, improve or use, any property, real, personal, or mixed;

(n) Sell, convey, mortgage, pledge, lease, exchange, abandon, or otherwise dispose of any property, real, personal, or mixed;

(o) Establish a budget and make expenditures;

(p) Adopt a seal and bylaws governing the management and operation of the **Interstate** Commission;

(q) Report annually to the Legislatures and Governors of the member states concerning the activities of the **Interstate** Commission during the preceding year. Such reports shall also include reports of financial audits and any recommendations that may have been adopted by the **Interstate** Commission;

(r) Coordinate education, training, and public awareness regarding the **compact**, its implementation, and its operation;

(s) Maintain records in accordance with the bylaws;

(t) Seek and obtain trademarks, copyrights, and patents; and

(u) Perform such functions as may be necessary or appropriate to achieve the purposes of the **compact**.

SECTION 13: FINANCE POWERS

(a) The **Interstate** Commission may levy on and collect an annual assessment from each member state to cover the cost of the operations and activities of the **Interstate** Commission and its staff. The total assessment must be sufficient to cover the annual budget approved each year for which revenue is not provided by other sources. The aggregate annual assessment amount shall be allocated upon a formula to be determined by the **Interstate** Commission, which shall promulgate a rule binding upon all member states.

(b) The **Interstate** Commission shall not incur obligations of any kind prior to securing the funds adequate to meet the same.

(c) The **Interstate** Commission shall not pledge the credit of any of the member states, except by, and with the authority of, the member state.

(d) The **Interstate** Commission shall be subject to a yearly financial audit conducted by a certified or **licensed** public accountant and the report of the audit shall be included in the annual report of the **Interstate** Commission.

SECTION 14: ORGANIZATION AND OPERATION OF THE **INTERSTATE** COMMISSION

(a) The **Interstate** Commission shall, by a majority of commissioners present and voting, adopt bylaws to govern its conduct as may be necessary or appropriate to carry out the purposes of the **compact** within twelve months of the first **Interstate** Commission meeting.

(b) The **Interstate** Commission shall elect or appoint annually from among its commissioners a chairperson, a vice-chairperson, and a treasurer, each of whom shall have such authority and duties as may be specified in the bylaws. The chairperson, or in the chairperson's absence or disability, the vice-chairperson, shall preside at all meetings of the **Interstate** Commission.

(c) Officers selected in subsection (b) shall serve without remuneration from the **Interstate** Commission.

(d) The officers and employees of the **Interstate** Commission shall be immune from suit and liability, either personally or in their official capacity, for a claim for damage to or loss of property or personal injury or other civil liability caused or arising out of, or relating to, an actual or alleged act, error, or omission that occurred, or that such person had a reasonable basis for believing occurred, within the scope of **Interstate** Commission employment, duties, or responsibilities; provided that such person shall not be protected from suit or liability for damage, loss, injury, or liability caused by the intentional or willful and wanton misconduct of such person.

(1) The liability of the executive director and employees of the **Interstate** Commission or representatives of the **Interstate** Commission, acting within the scope of such person's employment or duties for acts, errors, or omissions

occurring within such person's state, may not exceed the limits of liability set forth under the constitution and laws of that state for state officials, employees, and agents. The **Interstate** Commission is considered to be an instrumentality of the states for the purposes of any such action. Nothing in this subsection shall be construed to protect such person from suit or liability for damage, loss, injury, or liability caused by the intentional or willful and wanton misconduct of such person.

(2) The **Interstate** Commission shall defend the executive director, its employees, and subject to the approval of the attorney general or other appropriate legal counsel of the member state represented by an **Interstate** Commission representative, shall defend such **Interstate** Commission representative in any civil action seeking to impose liability arising out of an actual or alleged act, error or omission that occurred within the scope of **Interstate** Commission employment, duties or responsibilities, or that the defendant had a reasonable basis for believing occurred within the scope of **Interstate** Commission employment, duties, or responsibilities, provided that the actual or alleged act, error, or omission did not result from intentional or willful and wanton misconduct on the part of such person.

(3) To the extent not covered by the state involved, member state, or the **Interstate** Commission, the representatives or employees of the **Interstate** Commission shall be held harmless in the amount of a settlement or judgment, including attorney's fees and costs, obtained against such persons arising out of an actual or alleged act, error, or omission that occurred within the scope of **Interstate** Commission employment, duties, or responsibilities, or that such persons had a reasonable basis for believing occurred within the scope of **Interstate** Commission employment, duties, or responsibilities, provided that the actual or alleged act, error, or omission did not result from intentional or willful and wanton misconduct on the part of such persons.

## SECTION 15: RULE-MAKING FUNCTIONS OF THE **INTERSTATE** COMMISSION

(a) The **Interstate** Commission shall promulgate reasonable rules in order to effectively and efficiently achieve the purposes of the **compact**. Notwithstanding the foregoing, in the event the **Interstate** Commission exercises its rule-making authority in a manner that is beyond the scope of the purposes of the **compact**, or the powers granted hereunder, then such an action by the **Interstate** Commission shall be invalid and have no force or effect.

(b) Rules deemed appropriate for the operations of the **Interstate** Commission shall be made pursuant to a rule-making process that substantially conforms to the Model State Administrative Procedure Act of 2010, and subsequent amendments thereto.

(c) Not later than thirty days after a rule is promulgated, any person may file a petition for judicial review of the rule in the United States District Court for the District of Columbia or the federal district where the **Interstate** Commission has its principal offices, provided that the filing of such a petition shall not stay or otherwise prevent the rule from becoming effective unless the court finds that the petitioner has a substantial likelihood of success. The court shall give deference to the actions of the **Interstate** Commission consistent with applicable law and shall not find the rule to be unlawful if the rule represents a reasonable exercise of the authority granted to the **Interstate** Commission.

## SECTION 16: OVERSIGHT OF **INTERSTATE COMPACT**

(a) The executive, legislative, and judicial branches of state government in each member state shall enforce the **compact** and shall take all actions necessary and appropriate to effectuate the **compact's** purposes and intent. The provisions of

the **compact** and the rules promulgated hereunder shall have standing as statutory law but shall not override existing state authority to regulate the practice of medicine.

(b) All courts shall take judicial notice of the **compact** and the rules in any judicial or administrative proceeding in a member state pertaining to the subject matter of the **compact** which may affect the powers, responsibilities or actions of the **Interstate** Commission.

(c) The **Interstate** Commission shall be entitled to receive all service of process in any such proceeding, and shall have standing to intervene in the proceeding for all purposes. Failure to provide service of process to the **Interstate** Commission shall render a judgment or order void as to the **Interstate** Commission, the **compact**, or promulgated rules.

SECTION 17: ENFORCEMENT OF **INTERSTATE COMPACT**

(a) The **Interstate** Commission, in the reasonable exercise of its discretion, shall enforce the provisions and rules of the **compact**.

(b) The **Interstate** Commission may, by majority vote of the commissioners, initiate legal action in the United States District Court for the District of Columbia, or, at the discretion of the **Interstate** Commission, in the federal district where the **Interstate** Commission has its principal offices, to enforce compliance with the provisions of the **compact**, and its promulgated rules and bylaws, against a member state in default. The relief sought may include both injunctive relief and damages. In the event judicial enforcement is necessary, the prevailing party shall be awarded all costs of such litigation including reasonable attorney's fees.

(c) The remedies herein shall not be the exclusive remedies of the **Interstate** Commission. The **Interstate** Commission may avail itself of any other remedies available under state law or the regulation of a profession.

SECTION 18: DEFAULT PROCEDURES

(a) The grounds for default include, but are not limited to, failure of a member state to perform such obligations or responsibilities imposed upon it by the **compact**, or the rules and bylaws of the **Interstate** Commission promulgated under the **compact**.

(b) If the **Interstate** Commission determines that a member state has defaulted in the performance of its obligations or responsibilities under the **compact**, or the bylaws or promulgated rules, the **Interstate** Commission shall:

(1) Provide written notice to the defaulting state and other member states, of the nature of the default, the means of curing the default, and any action taken by the **Interstate** Commission. The **Interstate** Commission shall specify the conditions by which the defaulting state must cure its default; and

(2) Provide remedial training and specific technical assistance regarding the default.

(c) If the defaulting state fails to cure the default, the defaulting state shall be terminated from the **compact** upon an affirmative vote of a majority of the commissioners and all rights, privileges, and benefits conferred by the **compact** shall terminate on the effective date of termination. A cure of the default does not relieve the offending state of obligations or liabilities incurred during the period of the default.

(d) Termination of membership in the **compact** shall be imposed only after all other means of securing compliance have been exhausted. Notice of intent to terminate shall be given by the **Interstate** Commission to the Governor, the majority and minority leaders of the defaulting state's Legislature, and each of the member states.

(e) The **Interstate** Commission shall establish rules and procedures to address **licenses** and physicians that are materially impacted by the termination of a member state, or the withdrawal of a member state.

(f) The member state which has been terminated is responsible for all dues, obligations, and liabilities incurred through the effective date of termination including obligations, the performance of which extends beyond the effective date of termination.

(g) The **Interstate** Commission shall not bear any costs relating to any state that has been found to be in default or which has been terminated from the **compact**, unless otherwise mutually agreed upon in writing between the **Interstate** Commission and the defaulting state.

(h) The defaulting state may appeal the action of the **Interstate** Commission by petitioning the United States District Court for the District of Columbia or the federal district where the **Interstate** Commission has its principal offices. The prevailing party shall be awarded all costs of such litigation including reasonable attorney's fees.

SECTION 19: DISPUTE RESOLUTION

(a) The **Interstate** Commission shall attempt, upon the request of a member state, to resolve disputes which are subject to the **compact** and which may arise among member states or member boards.

(b) The **Interstate** Commission shall promulgate rules providing for both mediation and binding dispute resolution as appropriate.

SECTION 20: MEMBER STATES, EFFECTIVE DATE AND AMENDMENT

(a) Any state is eligible to become a member state of the **compact**.

(b) The **compact** shall become effective and binding upon legislative enactment of the **compact** into law by no less than seven states. Thereafter, it shall become effective and binding on a state upon enactment of the **compact** into law by that state.

(c) The Governors of nonmember states, or their designees, shall be invited to participate in the activities of the **Interstate** Commission on a nonvoting basis prior to adoption of the **compact** by all states.

(d) The **Interstate** Commission may propose amendments to the **compact** for enactment by the member states. No amendment shall become effective and binding upon the **Interstate** Commission and the member states unless and until it is enacted into law by unanimous consent of the member states.

SECTION 21: WITHDRAWAL

(a) Once effective, the **compact** shall continue in force and remain binding upon each and every member state; provided that a member state may withdraw from the **compact** by specifically repealing the statute which enacted the **compact** into law.

(b) Withdrawal from the **compact** shall be by the enactment of a statute repealing the same, but shall not take effect until one year after the effective date of such statute and until written notice of the withdrawal has been given by the withdrawing state to the Governor of each other member state.

(c) The withdrawing state shall immediately notify the chairperson of the **Interstate** Commission in writing upon the introduction of legislation repealing the **compact** in the withdrawing state.

(d) The **Interstate** Commission shall notify the other member states of the withdrawing state's intent to withdraw within sixty days of its receipt of notice provided under subsection (c).

(e) The withdrawing state is responsible for all dues, obligations and liabilities incurred through the effective date of withdrawal, including obligations, the performance of which extend beyond the effective date of withdrawal.

(f) Reinstatement following withdrawal of a member state shall occur upon the withdrawing state reenacting the **compact** or upon such later date as determined by the **Interstate** Commission.

(g) The **Interstate** Commission is authorized to develop rules to address the impact of the withdrawal of a member state on **licenses** granted in other member states to physicians who designated the withdrawing member state as the state of principal **license**.

SECTION 22: DISSOLUTION

(a) The **compact** shall dissolve effective upon the date of the withdrawal or default of the member state which reduces the membership in the **compact** to one member state.

(b) Upon the dissolution of the **compact**, the **compact** becomes null and void and shall be of no further force or effect, and the business and affairs of the **Interstate** Commission shall be concluded and surplus funds shall be distributed in accordance with the bylaws.

SECTION 23: SEVERABILITY AND CONSTRUCTION

(a) The provisions of the **compact** shall be severable, and if any phrase, clause, sentence, or provision is deemed unenforceable, the remaining provisions of the **compact** shall be enforceable.

(b) The provisions of the **compact** shall be liberally construed to effectuate its purposes.

(c) Nothing in the **compact** shall be construed to prohibit the applicability of other **interstate compacts** to which the states are members.

SECTION 24: BINDING EFFECT OF **COMPACT** AND OTHER LAWS

(a) Nothing herein prevents the enforcement of any other law of a member state that is not inconsistent with the **compact**.

(b) All laws in a member state in conflict with the **compact** are superseded to the extent of the conflict.

(c) All lawful actions of the **Interstate** Commission, including all rules and bylaws promulgated by the commission, are binding upon the member states.

(d) All agreements between the **Interstate** Commission and the member states are binding in accordance with their terms.

(e) In the event any provision of the **compact** exceeds the constitutional limits imposed on the Legislature of any member state, such provision shall be ineffective to the extent of the conflict with the constitutional provision in question in that member state.

**Credits**
**Source:** SL 2015, ch 198, § 1.

© 2019 by the State of South Dakota
S D C L § 36-4-44, SD ST § 36-4-44
Current through laws of the 2019 Regular Session effective March 11, 2019, and Supreme Court Rule 19-11

End of Document © 2019 Thomson Reuters. No claim to original U.S. Government Works.